IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| WENDY F.,<br><br>                Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS<br><br><br>Case No. 1:22-cv-00021-CMR<br><br><br>Magistrate Judge Cecilia M. Romero |

The parties in this case have consented to the undersigned conducting all proceedings (ECF 11). 28 U.S.C. § 636(c). Plaintiff seeks judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the "Act") (ECF 6). The court has considered the parties' briefs (ECF 18, 20, and 21), relevant portions of the certified administrative record (Tr.) (ECF 14), and the parties' arguments at hearings held on December 8 and 9, 2022 (ECF 23 and 24). The court, exercising jurisdiction under 42 U.S.C. § 405(g), AFFIRMS the Commissioner's final decision finding that Plaintiff was not disabled within the strict standards of the Act.

### I.     BACKGROUND

Plaintiff applied for DIB and SSI in 2019 (Tr. at 10). An administrative law judge's (ALJ's) decision denying her applications became the Commissioner's final decision when the agency's

Appeals Council denied her request for review (Tr. at 1–3, 10–25). *See* 20 C.F.R. § 404.981.[1] Plaintiff was 50 years old on her amended disability onset date of 6/1/2018 (*id.* at 24). Plaintiff filed application for DIB on 11/26/19, alleging disability due Fibromyalgia, PTSD, chronic pain, and anxiety ((Tr. at 12–13, 17). In a decision dated 9/20/21, the ALJ determined Plaintiff had severe impairments of "fibromyalgia, cervical and lumbar spine disorders, migraines, neuropathy, post-traumatic stress disorder, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c))." (*Id.* at 12).

The ALJ considered Plaintiff's cervical and lumbar spine impairment under Listing(s) 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root, finding the criteria not met (Tr. at 13). Also, the migraine headaches under listing 11.02 and peripheral neuropathy under 11.14, 11.00D2, and 11.00G2 and found the criteria not met. (*Id.* at 14). The ALJ considered Plaintiff's mental impairments under Listing(s) 12.04, 12.06, and 12.15 finding a moderate limitation in remembering or applying information (Tr. 14). The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work with additional limitations including: "the claimant can occasionally lift 20 pounds and frequently lift 10 pounds. She can stand and/or walk for a total of about six hours and sit for about six hours in an eight-hour day. She can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and frequently stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme temperatures, loud noise, fumes, dust, pulmonary irritants, unprotected heights, and heavy machinery. She can understand, remember, and perform simple work." (TR. at 16).

---

[1] References to the Code of Federal Regulations (C.F.R.) are to the 2021 edition of 20 C.F.R. Part 404, which governed DIB claims when the ALJ rendered her decision in this case. Substantively identical provisions at 20 C.F.R. Part 416 govern SSI claims.

At step four, the ALJ found that, given this RFC, was not able to perform past relevant work as actually or generally performed (Tr. at 23). Consistent with vocational expert testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including as an office helper, rental clerk, or recreation aide, all "light exertion, unskilled" work (Tr. at 24). The ALJ therefore concluded that she was not disabled and denied disability benefits (Tr. at 25). This appeal followed.

## II. STANDARD OF REVIEW

The Supreme Court has held that, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (citing *Glass v. Shalala*, 43 F.3d 1392 (10th Cir. 1994)). The court's inquiry "is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. The doctrine of harmless error applies when "no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## III. DISCUSSION

Plaintiff presents two challenges to the ALJ's decision. First, she argues that the ALJ did not evaluate her fibromyalgia consistent with the requirements of Social Security Ruling ("SSR")

12-2p, 2012 WL 3104869 (ECF 18 at 2, 7–11). Second, Plaintiff argues reversible error claiming the ALJ did not resolve an apparent inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") (*id.* at 2, 11–13). The court disagrees with both arguments.

A.  **Substantial evidence supports the ALJ's evaluation of Plaintiff's fibromyalgia**

Social Security Ruling 12-2p provides sub-regulatory guidance on how the Social Security Administration ("SSA") develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how SSA evaluates fibromyalgia in disability claims. 2012 WL 3104869, at *1. Plaintiff argues that "other than acknowledging fibromyalgia as a severe impairment, the ALJ makes no findings specific to fibromyalgia in the decision" (ECF 18 at 8). The court disagrees.

Under SSR 12-2p, once an ALJ finds that fibromyalgia is a medically determinable impairment, the ALJ must continue through the agency's five-step sequential evaluation process as in any other disability case. 2012 WL 3104869, at *5. Here, although the ALJ did not discuss the two criteria from SSR 12-2p for establishing that fibromyalgia is a medically determinable impairment, any omission was harmless error because the ALJ went on to find that Plaintiff's fibromyalgia was a severe medically determinable impairment (Tr. at 12). The ALJ then continued through the five-step sequential evaluation process, as contemplated by the SSR (Tr. at 13-25).

Moreover, Plaintiff's reading of SSR 12-2p would impose a greater articulation requirement on the ALJ in cases involving fibromyalgia than in cases involving other medical conditions. The court does not read SSR 12-2p so broadly. For instance, Plaintiff argues that the ALJ erred because she did not discuss whether Plaintiff had good days and bad days (ECF 18 at 8). SSR 12-2p recognizes that "the symptoms of [fibromyalgia] can wax and wane so that a person

4

may have 'bad days and good days.'" 2012 WL 3104869, at *6. However, the SSR does not require that an ALJ discuss whether the claimant has good days and bad days; rather, the SSR directs an ALJ to "consider a longitudinal record" to evaluate whether the claimant's fibromyalgia symptoms wax and wane. *Id*. The ALJ here considered the longitudinal record. Although the ALJ did not use the terms "good days" or "bad days," SSR 12-2p does not impose such an articulation requirement.

Additionally, the court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's reported symptoms, including those symptoms arising from fibromyalgia. The RFC assessment must address the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).[2] Plaintiff claimed to experience severe, potentially disabling, physical and mental symptoms due to fibromyalgia (and other impairments) (Tr. 17). ALJs evaluate claimants' fibromyalgia symptoms the same way they evaluate other symptoms. *See* SSR 12-2p, 2012 WL 3104869, at *5. Here, the ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence (*id.)*. This finding is due particular deference by the court. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

The court must uphold an ALJ's symptom evaluation when it is supported by substantial evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court should find that "'no substantial evidence'" supports an ALJ's decision only where there is a "'conspicuous absence of credible choices'" or "'no contrary medical evidence.'" *Trimiar v. Sullivan*,

---

[2] Effective March 28, 2016, SSR 16-3p eliminated the term "credibility" from the agency's sub-regulatory policy. 2017 WL 5180304. However, the regulation governing symptom analysis, 20 C.F.R. § 404.1529, has not changed, and cases interpreting it remain relevant.

5

966 F.2d 1326, 1329 (10th Cir. 1992) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Such is not the case here, as the ALJ gave six well-supported reasons for concluding that Plaintiff's reported symptoms—including her symptoms arising from fibromyalgia—were not as severe as she claimed: (1) objective medical evidence, (2) the efficacy of her treatment, (3) her failure to follow her medical providers' treatment advice, (4) her failure to report certain symptoms to her medical providers, (5) her conservative treatment, and (6) her daily activities (Tr. 17-21).

This case also differs from the case Plaintiff raised during oral argument, *L.A.R. v. Kijakazi*, No. 21-cv-02728-NRN, 2022 WL 4364154 (D. Colo. Sept. 20, 2022). In *L.A.R.*, the court found that "[t]he ALJ erred by relying too heavily on the absence of objective evidence of physiological abnormalities related to [the claimant's] fibromyalgia." *Id.* at *3. That court also noted that "an ALJ must rely on more than a lack of objective supporting evidence when considering a claimant's fibromyalgia." *Id.* at *5 (citing *Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007)). Here, unlike *L.A.R.*, the ALJ appropriately considered objective medical evidence along with regulatory factors relevant to the symptom evaluation. *See Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 844 (10th Cir. 2020); *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015). The court therefore finds that the reasons given by the ALJ were legally sound and supported by substantial evidence.

The ALJ's evaluation of the medical opinions and prior administrative medical findings provided additional evidentiary support for the ALJ's finding that Plaintiff's fibromyalgia did not impose limitations beyond those the ALJ assessed. While one physician, Dr. Nielson, opined that Plaintiff's fibromyalgia resulted in limitations that would effectively preclude competitive employment, the ALJ found that Dr. Nielson's medical opinion was not persuasive (Tr. at 22). *See* 20 C.F.R. § 404.1520c(b). Plaintiff does not challenge this finding and has therefore waived any

6

argument that Dr. Neilson's medical opinion supported limitations beyond those assessed by the ALJ. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (the court will consider "only those of [Plaintiff's] contentions that have been adequately briefed for our review.").

Consultative examiner Dr. Silva considered Plaintiff's fibromyalgia when evaluating her physical abilities (*see* Tr. 564, 565, 569). Dr. Silva opined that, notwithstanding Plaintiff's fibromyalgia, she had no limitations on sitting, standing, or walking; could lift and carry 15 to 20 pounds frequently and 20 to 25 pounds occasionally; and had no postural, manipulative, or environmental limitations (Tr. 569-70). Likewise, State agency medical consultants Dr. Barrett and Dr. Snyder considered Plaintiff's fibromyalgia when evaluating her physical abilities (*see* Tr. 83, 127). These doctors found that, notwithstanding Plaintiff's fibromyalgia, she had abilities consistent with a range of light work (Tr. 82-84, 124-28). The ALJ found that Dr. Silva's medical opinion and the prior administrative medical findings from Dr. Barrett and Dr. Snyder were persuasive (Tr. 21). The court finds that these medical source statements—which explicitly considered Plaintiff's fibromyalgia—provide additional support for the ALJ's evaluation of Plaintiff's fibromyalgia. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("[T]he consultative examination and resulting report, which took into account claimant's obesity, supports the ALJ's RFC determination.").

In sum, the court finds that the ALJ complied with the guidance from SSR 12-2p when she evaluated Plaintiff's fibromyalgia. Moreover, the court finds that substantial evidence supports the ALJ's finding that Plaintiff's fibromyalgia did not results in functional limitations beyond those the ALJ assessed in Plaintiff's residual functional capacity. The court therefore rejects Plaintiff's first challenge to the Commissioner's final decision.

7

**B.      Substantial evidence supports the ALJ's finding that Plaintiff could do other work existing in significant numbers in the national economy**

The court also rejects Plaintiff's second challenge to the ALJ's decision. Whether a claimant can do a particular job is a question of fact, not a question of law. *See* 20 C.F.R. § 404.1560(c)(2). The Commissioner's findings of fact are reviewed under the highly deferential substantial evidence standard of review. *Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations" (citing *Consolidated Edison Co.*, 305 U.S. at 229)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* Here, a reasonable mind might accept the vocational expert's testimony as relevant evidence adequate to support the ALJ's conclusion that Plaintiff could do the three jobs identified by the vocational expert.

The ALJ asked a vocational expert about a hypothetical individual with Plaintiff's age, education, work experience, and RFC (Tr. at 67–8). The expert testified that such an individual could work in three representative occupations: (1) office helper, described at DOT No. 239.567-010, with 56,000 positions in the national economy; (2) rental clerk, described at DOT No. 295.357-018, with 300,000 positions in the national economy; and (3) recreation aide, described at DOT No. 195.367-030, with 115,000 positions in the national economy (Tr. 68). The ALJ cited this testimony in support of her finding that Plaintiff could do other work existing in significant numbers in the national economy (Tr. 24). *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (stating that when the findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical questions to the vocational expert, the vocational expert's testimony further supports the ALJ's related determination).

Plaintiff asks the court to find in the first instance that the vocational expert's testimony was inconsistent with the DOT (ECF 18 at 11–13). But the ALJ affirmatively inquired of the vocational expert if her testimony was consistent with the DOT, and the expert testified that her testimony was consistent with the DOT with the exception of time off task, absenteeism, and stress, which are not addressed in the DOT (Tr. at 69). Neither Plaintiff nor her counsel elicit any testimony calling into question the vocational expert's affirmation that her testimony was consistent with the DOT. The expert's testimony supports the ALJ's finding that Plaintiff could do the three jobs identified.

Even if the court were to exclude the rental clerk and recreation aide jobs challenged by Plaintiff, any error would be harmless because a significant number of jobs remain that Plaintiff could perform. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). In the harmless error context, "there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 . . . and 152,000 . . ." *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016). Other courts have found fewer than 56,000 nationwide jobs sufficient in the harmless error context. *See, e.g.*, *Sawney v. Saul*, No. CIV-19-163-SPS, 2020 WL 5652177, at *9 (E.D. Okla. Sept. 22, 2020) (25,000 remaining jobs); *Tapia v. Saul*, No. CV 19-463 GJF, 2020 WL 2043533, at *9 (D.N.M. Apr. 28, 2020) (42,850 remaining jobs); *Washington v. Saul*, No. 18-1286-EFM, 2019 WL 4080925, at *4 (D. Kan. Aug. 29, 2019) (53,000 remaining jobs).

Here, Plaintiff does not dispute that she was able to perform the representative occupation of office helper, which reflects 56,000 jobs nationally (Tr. 24, 68). The court therefore finds that, even if the occupations of rental clerk and recreation aide were excluded, any error would be

9

harmless because an estimated 56,00 number of jobs remain that Plaintiff could perform. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (placing the burden to show harmful error on the party challenging an agency's determination); *Trujillo*, 818 F. App'x at 842 (holding that any alleged error with at step five was harmless, where there was no dispute that the claimant could perform the third job, which existed in significant numbers in the national economy).

## IV.   CONCLUSION

The court AFFIRMS the Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The ALJ's decision was supported by substantial evidence and free of reversible legal error. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 21 March 2023.

_Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah